1  Alex I. Poust, OSB #925155
   Email: apoust@schwabe.com
2  Schwabe, Williamson & Wyatt, P.C.
   Pacwest Center
3  1211 SW 5th Ave., Suite 1900
   Portland, OR  97204
4  Telephone 503.222.9981
   Fax 503.796.2900
5
       Of Attorneys for Creditor, CNH Capital America LLC

6

7

8

9              IN THE UNITED STATES BANKRUPTCY COURT

10                 FOR THE DISTRICT OF OREGON

11  In re                               | Chapter 13

12  **Eugene Tyrone Alwine**            | No. 09-39313-rld13
    **Bobbi Lee Alwine,**
13                                       | **AMENDED OBJECTION TO
                                         | CONFIRMATION OF CHAPTER 13 PLAN
14              Debtors.                 | DATED NOVEMBER 23, 2009**

15                                       | Hearing Date: January 28, 2010
                                         | Hearing Time: 9:00 a.m.
16                                       | Hearing Location: US Bankruptcy Court,
                                         | Courtroom # 3
17

18
        CNH Capital America LLC ("CNH") objects to confirmation of the debtors' proposed
19
    Chapter 13 Plan dated November 23, 2009 (the "Plan"), on the grounds that (a) the Plan does not
20
    provide for payment in full of CNH's secured claims, and (b) debtors have no interest in some of
21
    CNH's collateral, which is owned not by debtors, but by their affiliated company.  In support of
22
    this amended objection CNH alleges as follows:
23
            1.      On or about August 2, 2005, debtor Eugene Tyrone Alwine ("Alwine") executed
24
    a Retail Installment Contract and Security Agreement for the purchase of a Hitachi Excavator,
25
    Model EX120-3, serial number 42564 ("2005 Agreement").  A true and correct copy of the 2005
26

Page 1 of 4-   AMENDED OBJECTION TO CONFIRMATION OF
               CHAPTER 13 PLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981

1    Agreement is attached and incorporated as Exhibit A.  The balance owing under the 2005

2    Agreement is $11,953.93 and the equipment has a value of approximately $28,000.00.   The Plan

3    undervalues the property at $6,000.00.  Because CNH is oversecured, and pursuant to 11 U.S.C.

4    §1325(a)(5), CNH is entitled to the full amount of its secured claim, plus post-confirmation

5    interest at the contract rate of 9.5% per annum.

6           2.       On or about November 30, 2004, debtors' affiliate, 9-Mile Construction &

7    Excavation, Inc. ("9-Mile"), executed a Retail Installment Contract and Security Agreement for

8    the purchase of a Takeuchi Track Loader, Model TL130, serial number 21301629 ("2004

9    Agreement").  A true and correct copy of the 2004 Agreement is attached and incorporated as

10   Exhibit B.  The balance owing under the 2004 Agreement is $9,091.35 and the equipment has a

11   value of $9,500.00.  The Plan, however, undervalues the equipment at $8,000.  Debtors have no

12   interest in the Loader or the 2004 Agreement, which are not part of the Alwines' bankruptcy

13   estate.  Alternatively, even if the Loader were part of this bankruptcy estate, under 11 U.S.C.

14   §1325(a)(5), CNH is entitled to the full amount of its secured claim, plus post-confirmation

15   interest at the rate of 10.25% per annum.

16          3.       On or about March 7, 2006, 9-Mile executed a Retail Installment Contract and

17   Security Agreement for the purchase of a Takeuchi Excavator, Model TB145, Serial Number

18   14514744 ("2006 Agreement").  A true and correct copy of the 2006 Agreement is attached and

19   incorporated as Exhibit C.  The balance owing under the 2006 Agreement is $28,781.29 and the

20   equipment has a value of not less than $22,000.00.  The Plan undervalues the equipment at

21   $18,000.00.  Again, debtors have no interest in the Excavator or the 2006 Agreement, which are

22   not part of the Alwines' bankruptcy estate.  Alternatively, even if the Excavator were part of this

23   bankruptcy estate, under 11 U.S.C. §1325(a)(5), CNH is entitled to the full amount of its secured

24   claim, plus post-confirmation interest.

25   / / /

26   / / /

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981

PDX/109167/174169/SCC/5567990.2

Case 10-31675-rld13    Doc 23    Filed 01/26/10

1        For the foregoing reasons, the Plan should not be confirmed.  Alternatively, the Plan

2  should be modified to provide for payment of CNH's secured claims, without waiver of its rights

3  and remedies against 9-Mile.

4        Dated this 26th day of January, 2010.

5                     SCHWABE, WILLIAMSON & WYATT, P.C.

6

7               By:    /s/ Alex I. Poust

8                   Alex I. Poust, OSB #925155
                       apoust@schwabe.com

9                   Facsimile: 503.796.2900
                       Of Attorneys for Creditor, CNH Capital

10                  America LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981

PDX/109167/174169/SCC/5567990.2

# CNH Capital

## RETAIL INSTALLMENT SALE CONTRACT AND SECURITY AGREEMENT
### ( Fixed Rate )

Dealer No. 01423

Credit Application No. 99411-A

| "Buyer(s)": Legal Name(s), Street Address, City, State, Zip Code | | "Seller": (Dealer's Legal Name and Address) |
|---|---|---|
| EUGENE ALWINE<br>1147 SE 1ST AVE SUITE#108<br>CANBY, OR 97013 | ☒ Individual/Sole Proprietorship<br><br>If So, State of Principal<br>Residence: OR<br><br>☐ General Partnership<br><br>If So, State of Chief<br>Executive Office: | METRO TRACTOR, INC.<br>P.O. BOX 340<br>12111 S.E. HWY. 212<br>CLACKAMAS, OR 97015<br>Clackamas County |
| County/Parish  Clackamas<br><br>Social Security No.<br>or Taxpayer ID No. _____-6987 | ☐ Corporation/LLC/LP<br><br>If So, State In Which Formed:<br>Organization ID No.: | |

The undersigned Buyer (if more than one, collectively called "Buyer") hereby purchases from Seller and Seller hereby sells to Buyer the following goods (the "Equipment") at the Time Sale Price and upon the terms set forth herein:

| NEW* OR USED | "EQUIPMENT" (Make and Type) | MODEL | SERIAL NUMBER | HOURS | "CASH SALE PRICE" |
|---|---|---|---|---|---|
| U | Hitachi Excavator | EX120-3 | 42564 | 3456.0 | 39,500.00 |
| | | | | | |
| | | | | | |
| | | | | | |

The above Equipment is purchased for ☒ commercial/business use ☐ agricultural use. *New Equipment is unused equipment, a rental unit or a demonstrator for which the manufacturer will supply all or a portion of a new equipment warranty. New equipment may have been manufactured in a year prior to the year of purchase.

| | | | | | | TOTAL | 39,500.00 |

| "TRADE-IN EQUIPMENT" | | | | | GROSS ALLOWANCE (In Dollars) | SECURED DEBT DUE (In Dollars) | NET TRADE-IN ALLOWANCE (In Dollars) |
|---|---|---|---|---|---|---|---|
| MAKE | TYPE | MODEL | SERIAL NUMBER | HOURS | | | |
| | | | | | N/A | N/A | N/A |

**NO WARRANTY.** The Equipment is sold AS IS except for any applicable manufacturer's express, written warranty. If any manufacturer's express warranty applies to the Equipment, such warranty is restricted to the manufacturer's written, limited warranty provided separately to Buyer. Seller and manufacturer make no other representation or warranty, express or implied, and specifically exclude the implied warranties of merchantability and fitness for particular purpose.* Neither Seller nor manufacturer will be liable for incidental or consequential damages resulting from a breach of the express warranty or any implied warranty imposed by law.*

*Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.

**PREPAYMENTS.** Buyer may make a partial prepayment of the unpaid time balance hereunder (the "Time Balance") at any time, but any partial prepayment will not change or defer Buyer's next scheduled payments. If Buyer prepays the full unpaid Time Balance on construction equipment for commercial/business use, Buyer shall pay a prepayment fee of up to $150, unless such fee is prohibited by applicable law.

**LATE CHARGES/DEFAULT RATE/RETURNED CHECKS.** Buyer shall pay a late charge on each payment more than 10 days past due at the highest amount permitted by applicable law. Buyer shall pay interest on the unpaid balance after maturity (by acceleration or otherwise) at the highest rate permitted by applicable law. If a check is returned for any reason, Seller or Assignee may charge Buyer a returned check processing fee as established by Seller or Assignee from time to time not to exceed the maximum permitted under applicable law.

**EXTENSIONS AND REFINANCING.** If Seller or Assignee extends, defers or refinances any payments due under this Agreement, Seller or Assignee may, at its option, increase the Time Price Differential Rate.

**SECURITY INTEREST AND COLLATERAL.** Buyer hereby grants to Seller a security interest in the Equipment, and in all improvements, parts and accessories belonging to the Equipment, and all substitutions, replacements, products, proceeds (such as insurance proceeds) and all accessions related to the Equipment (the Equipment and such items are collectively referred to herein as the "Collateral"), to secure payment and performance of all existing and future obligations of Buyer under this agreement (the "Agreement") or any other agreement between Buyer and Seller, between Buyer and Assignee or any affiliate of Assignee (the "Obligations"). Loss of or damage to the Equipment shall not release Buyer from any of the Obligations.

Upon request, Buyer shall take any action reasonably deemed necessary by Seller to protect and enforce Seller's interest in the Collateral or rights under this Agreement. Seller is authorized to examine the Collateral wherever located at any reasonable time or times. Buyer authorizes Seller to insert in this Agreement, or amend any financing statement or title registration documentation to reflect, the serial and/or model numbers of the Equipment if unknown at the time this Agreement is executed and to correct any errors in such numbers or any other errors in the description of the Equipment.

BUYER REPRESENTS THAT THE EQUIPMENT IS NOT BEING PURCHASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.

**NOTICE TO THE BUYER:**

1. DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE ADDITIONAL PAGES, EVEN IF OTHERWISE ADVISED.

2. DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.

3. YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.

ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS AGREEMENT ARE A PART OF THIS AGREEMENT. THE FIRST PAGE MUST BE SIGNED, AND ALL OTHER PAGES INITIALED BY THE BUYER(S).

I agree to the foregoing. I have received and examined the Equipment, which is in good operating order and condition and is as described. I acknowledge receipt of a copy of this Agreement. I agree to purchase the Equipment described above on the terms of this Agreement.

X _Eugene T Alwine_

Buyer/Buyer's Representative                              Title (if applicable)

08-02-2005   EUGENE ALWINE
Date          Print Name

X _____

Buyer/Buyer's Representative                              Title (if applicable)

Date          Print Name

X _____

Seller's Representative

08-02-2005   METRO TRACTOR, INC.
Date          Print Name

21004A Rev. 1/05 Previous editions may not be used.

CNH CAPITAL COPY

Page 1 of 5

V7.1

EXHIBIT    A

PAGE   1   OF   6

# CNH Capital

Dealer No. 01423
Credit Application No. 99411-A
Buyer Name EUGENE ALWINE

## STATEMENT OF TRANSACTION

1. Cash Sale Price — 1. $ 39,500.00
2. Cash Down Payment — $ 8,622.50
   - Net Trade-In Allowance — $ N/A
   - Manufacturer's Rebate — $ N/A
   - Total Down Payment — 2. $ 8,622.50
3. Unpaid Balance of Cash Sale Price (1 minus 2) — 3. $ 30,877.50
4. Other Charges
   - (a) Taxes (Not in Cash Price) — $ N/A
   - (b) Official Fees — $ 10.00
   - (c) UCC Filing Service Fee — $ 12.50
   - (d) Administrative Fee — $ 100.00
   - (e) Physical Damage Insurance — $ N/A
   - (f) Credit Life Insurance — $ N/A
   - (g) Credit Accident & Health Insurance — $ N/A
   - (h) Liability Insurance — $ N/A
   - (i) Manufacturer's Extended Warranty Plan — $ N/A
   - (j) Extended Service Protection Plan — $ N/A
   - (k) (Other) — $ N/A
   - Total Other Charges — 4. $ 122.50
5. Unpaid Balance (Amount Financed) (3+4) — 5. $ 31,000.00
6. Time Price Differential (Finance Charge) — 6. $ 8,200.32
7. Time Balance to be Paid (Total of Payments) (5+6) — 7. $ 39,200.32
8. Time Sale Price (Total Sale Price) (1+4+6) — 8. $ 47,822.82
9. The Unpaid Balance hereof shall bear Finance Charges computed at a per annum rate (the "Time Price Differential Rate" or "APR") equal to 9.50 % (this is a FIXED RATE contract).
10. Date APR begins accruing: 08-02-2005
    Mo. Day Yr.

Buyer agrees to pay to the order of Seller the Time Balance (line item 7) in accordance with the following schedule:

| NO. OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| 59 | 1 Month | $ 653.35 | 09/15/2005 |
| 1 | 1 Month | $ 652.67 | 08/15/2010 |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |

The total "Secured Debt Due" is   $ N/A
The secured debt on the Trade-In Equipment is owed to:

Lender Name _____ Acct. No. _____

Lender Address _____ Phone No. _____

Lender City _____ State _____ Zip _____

Payoff Good Through: _____

☐ If checked, Seller represents that the above debt has been paid.

Buyer hereby conveys to Seller all right, title and interest in the Trade-in Equipment free and clear of all encumbrances except as noted above.

**GUARANTY:**

The undersigned guarantees the prompt performance of Buyer's Obligations under the Agreement, and all modifications and extensions thereof, including prompt payment of all sums when due. The undersigned shall, immediately upon demand, pay any sum due under the Agreement and all modifications and extensions thereof, without setoff. The undersigned hereby waives notice of any modifications, amendments, or extensions of the Agreement, and of Buyer's nonperformance or breach of the Agreement. The payment obligations under this Guaranty are the direct, primary, and continuing obligations of the undersigned and the undersigned's heirs, successors and assigns, and not merely a guaranty of collection. Capitalized terms used in this Guaranty have the same meaning given to them in the Agreement.

Guarantor Signature: _____   Address: _____

Print Name: _____   City, State, Zip: _____

X _____
Buyer's Initials

21004A Rev. 1/05 Previous editions may not be used.

CNH CAPITAL COPY

Page 2 of 5
V7.1

EXHIBIT A
PAGE 2 OF 6

# CNH Capital

Dealer No. 01423
Credit Application No. 99411-A
Buyer Name EUGENE ALWINE

## ADDITIONAL PROVISIONS

1. **Assignment.** Seller will assign this Agreement to CNH Capital America LLC (hereinafter "Assignee"). Buyer acknowledges that Seller has the right to assign this Agreement, that all rights and benefits but no obligations (if any) of Seller under this Agreement may be exercised by Assignee and that no obligations (if any) of Seller pass to Assignee. Upon receipt of notice from Assignee with instructions for payment, Buyer shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Buyer and Seller and their respective heirs, personal representatives, successors or assigns; provided, however, that Buyer may not assign its obligations under this Agreement to any person without Assignee's prior written consent.

2. **Notification of Change in Residence, Principal Office, or Organizational Form.** If Buyer changes (a) its state of principal residence, or (b) the state in which its chief executive office is located, or (c) the state in which its corporation, limited liability company or limited partnership is organized, or (d) its form of organization (such as from an individual to a corporation), Buyer will notify Assignee in writing promptly, but in no event more than thirty days after any such change.

3. **Waiver of Defenses Against Assignee; Indemnification.** Buyer will not assert against Assignee any claim or defense which Buyer may have against Seller or the manufacturer of the Equipment. Buyer agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee all amounts under this Agreement is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, notwithstanding any breach or alleged breach of any representation, warranty or condition with respect to the Equipment or any dispute which now or hereafter arises between Buyer and Seller or any other person. Buyer shall indemnify and hold harmless Seller, Assignee and their officers, directors, employees and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and against any and all loss, damages, injuries, claims, demands, costs and expenses (including without limitation reasonable attorneys' fees and expenses) of any kind and nature, arising out of or connected with the use, condition (including without limitation, all defects whether or not discoverable by Buyer, Seller or Assignee) or operation of the Equipment or any part thereof. Buyer shall promptly notify Assignee of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Agreement or the Equipment of which Buyer has notice.

4. **Buyer's Covenants.** Buyer shall (i) keep the Equipment in the county of Buyer's address set forth on page 1 of this Agreement and not remove the Equipment from such address, except temporarily in connection with its ordinary use, unless Assignee consents in writing; (ii) maintain the Equipment in good condition and repair and not permit its value to be impaired; (iii) keep the Collateral free of all liens, encumbrances and security interests of persons other than Assignee; (iv) defend the Collateral against all claims and legal proceedings by persons other than Assignee; (v) pay and discharge when due all taxes, fees, levies and other charges upon the Collateral; (vi) pay when due all taxes arising from the purchase of the Equipment under this Agreement, excluding any taxes based upon Seller's net income; (vii) use Equipment solely in the conduct of Buyer's business; (viii) ensure Equipment will be used solely within the intended uses of the manufacturer during the term of this Agreement; (ix) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; (x) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; and (xi) strictly follow the terms of Provision 1 of this Agreement.

   Each individual executing this Agreement represents and warrants that he or she has the requisite power and authority to enter into this Agreement and execute all related documents, to perform its obligations and consummate the transactions contemplated under this Agreement and related documents and that the execution and delivery of this Agreement and all related documents and the consummation of the transactions under this Agreement have been duly authorized by the Buyer.

5. **Insurance.** Buyer shall keep the Equipment and Seller's and its assigns interest in it insured against fire, theft, physical damage and other hazards under policies listing Assignee as loss payee or as an additional insured, with such provisions, for such amounts (but not less than the unpaid balance outstanding under this Agreement) and by such insurers as shall be satisfactory to Assignee from time and time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days written notice of cancellation, lapse or expiration to Assignee. Buyer assigns (and directs any insurer to pay) to Assignee from any unpaid balance of the Obligations, and then to Buyer. Buyer must make all payments due under this Agreement whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Buyer or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default.

   If Buyer purchased physical damage insurance that is financed under this Agreement, Buyer hereby requests and authorizes Seller (provided Seller is properly licensed to do so) or Seller's designee; (a) to arrange physical damage insurance for the benefit of Seller and Buyer that covers physical damage to the Equipment, (b) to replace or otherwise modify such insurance as Seller deems appropriate and (c) to be Buyer's attorney-in-fact to make claim for, receive payment of and execute and endorse and negotiate all documents, checks or drafts received in payment of loss or damage under the insurance. This Agreement includes and hereby incorporates by reference any Insurance and Extended Service Plan Addendum signed in connection with this Agreement.

   **STATEMENT TO BUYER: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS AGREEMENT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. BUYER UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS AGREEMENT, PRE-PAYMENT OF BUYER'S OBLIGATIONS UNDER THIS AGREEMENT MAY RESULT IN LOSS OF INSURANCE COVERAGE.**

   If Buyer purchased liability insurance that is financed under this Agreement, Buyer hereby requests and authorizes Seller (provided Seller is authorized to do so) or Seller's designee to arrange for the liability insurance to be issued.

6. **Modifications and Waivers.** This Agreement sets forth the entire understanding between Seller and Buyer. No modification, amendment or extension of this Agreement and no waiver of any provision of this Agreement shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Seller shall not constitute a waiver of any other prior or subsequent default, except that Buyer authorizes Seller to insert in this Agreement the serial number and/or model number of any Equipment if this information is unknown when this Agreement is executed and to correct any errors in such numbers or any other patent errors in the description of the Equipment.

7. **Authority of Assignee to Perform for Buyer.** If Buyer fails to perform any of Buyer's duties set forth in this Agreement (including, specifically but without limitation, the purchase of insurance), Assignee may, at its option, in Buyer's name or otherwise, take any such action, including, without limitation, signing Buyer's name or paying any amount so required, and all costs and expenses incurred by Seller or Assignee in connection therewith shall form part of the Obligations and shall be payable by Buyer upon demand with interest from the date of payment by Seller or Assignee at the highest rate permitted by law.

8. **Default.** Buyer shall be in default under this Agreement if any of the following occurs:

   (a) Buyer fails to pay when due any of the Obligations, or to perform any other obligation of Buyer in this Agreement in any renewal or refinancing of this Agreement;

   (b) a Buyer dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to assign this Agreement or attempts to remove, sell, transfer, further encumber, part with possession of or sublet any Equipment;

   (c) any warranty or representation made by Buyer to induce Seller or Assignee to extend credit to Buyer, under this Agreement or otherwise, is false in any material respect when made or Buyer fails to perform any covenant under this Agreement;

   (d) Buyer fails to maintain applicable required insurance or fails to comply with the requirements of any such insurance;

   (e) any other event occurs that causes Seller or Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk; or

   (f) the Equipment is impounded or confiscated by any federal, state or local governmental authority.

X _____
Buyer's Initials

EXHIBIT  A
PAGE  3  OF  6

# CNH Capital

Dealer No. __01423__
Credit Application No. __99411-A__
Buyer Name __EUGENE ALWINE__

9.  **Expenses.** To the extent not prohibited by law, Buyer shall reimburse Seller or Assignee for any expense incurred by Seller or Assignee in protecting or enforcing their rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Collateral, and all expenses and costs incurred in collecting the Obligations, and all such expenses shall form part of the Obligations.

10. **Conflict with Law.** Any provision of this Agreement prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Agreement. The validity, construction and enforcement of this Agreement are governed by the laws of the state in which the Seller is located. All terms not otherwise defined have the meanings assigned to them by the Uniform Commercial Code.

11. **Authorization to Execute and File Financing Statements and Lien Documents.** Buyer hereby authorizes Seller or Seller's designee to execute and file financing statements, and any motor vehicle title, registration and lien notification documentation, and any amendments thereto on behalf and in the name of Buyer to evidence Seller's security interest in the Collateral.

12. **Time Price Calculations.** If this is a variable rate contract, the Prime Rate for a given calendar month shall be the rate designated as the "Prime Rate" as published in *The Wall Street Journal* on the twentieth day of the prior calendar month (or on the next day published if not published on the twentieth day). If *The Wall Street Journal* ceases publication permanently or no longer publishes a "Prime Rate", the Prime Rate shall mean the prime loan rate of any federally chartered bank selected by Assignee. The payments, including Time Price Differential (Finance Charge) indicated herein, have been calculated using the Time Price Differential Rate (APR) in effect at the commencement of this Agreement and indicated herein. The final payment shall be recalculated to reflect increases/decreases in the Prime Rate during the remaining term. The Time Price Differential Rate (APR) shall never be less than 0%.

    For all contracts, the Time Price Differential Rate (APR) shall be calculated for the actual number of days elapsed, using a daily rate determined by dividing the annual rate by 365. Buyer shall make all payments in lawful money of the United States of America.

13. **Remedies upon Default.** Upon the occurrence of any event of default, Seller shall have all rights and remedies provided by the Uniform Commercial Code or any other applicable law and Seller may, at its option: (i) declare all Obligations immediately due and payable (excluding the unearned Time Price Differential) without notice or demand, nor any waiver of intent to accelerate or notice of acceleration; (ii) take possession of the Collateral, without notice or hearing, and, where permitted by law, Buyer expressly waives any right to notice or a prior hearing; (iii) render the Equipment unusable; (iv) require Buyer to assemble the Collateral and make it available to Seller at any convenient place designated by Seller; or (v) sell (including at wholesale) or otherwise dispose of the Collateral at public or private sale for cash or on credit terms, without notice unless required by law. If notice is required by law, ten (10) days' notice to Buyer shall be deemed reasonable notice. All rights and remedies may be exercised by Seller either separately or in combination and any action taken by Seller to recover payment from Buyer of the Obligations shall not limit Seller's rights with respect to the Collateral. Seller may apply all proceeds of realization of the Collateral to such part or parts of the Obligations as Seller may decide. If there is a deficiency, Buyer will pay the amount of the deficiency upon demand. To the extent permitted by law Buyer waives notice of dishonor, presentment and demand as to this Agreement.

---

**Automatic Payment Plan Enrollment Form**

*The undersigned authorizes CNH Capital America LLC or any assignee ("CNH Capital") to initiate withdrawals from the account designated below and maintained with the bank identified below by any means agreed upon by CNH Capital and the bank, or to withdraw by electronic fund transfer from said account, sums due CNH Capital pursuant to retail contracts or leases. The undersigned further authorizes the bank to take all actions necessary to effect such withdrawals and transfers. The undersigned may cancel these authorizations by providing CNH Capital written notice, but any such cancellation will become effective five days after CNH Capital receives the notice. CNH Capital may cancel this authorization at any time by written notice.*

Customer Name (as it appears on the payment notices) _____

Address _____ City _____ State _____ Zip _____

Customer's Bank Name _____

Bank Address _____ City _____ State _____ Zip _____

Customer Account Number _____

☐ I prefer to use my checking account. I have enclosed a voided check.

Routing # _____   Account # _____

☐ I prefer to use my savings account. I have confirmed with my bank the routing number and my withdrawal slip is enclosed.

Routing # _____   Account # _____

☐ Be sure to date and sign this form.

Date _____   Signature _____

Date _____   Signature _____

X _____
Buyer's Initials

21004A   Rev. 1/05   Previous editions may not be used.

EXHIBIT __A__
PAGE __4__ OF __6__

# CNH Capital

Dealer No. <u>01423</u>
Credit Application No. <u>99411-A</u>
Buyer Name <u>EUGENE ALWINE</u>

## ASSIGNMENT

Dealer (hereinafter "Assignor") hereby assigns all its rights, title and interest in and to the Agreement and the Equipment to CNH Capital America LLC (hereinafter "Assignee"), under terms also described in the Retail Finance Agreement or other documents (collectively hereinafter "Agreement") executed by the Assignor and Assignee.

Assignor warrants and represents as follows: (a) all statements contained in the Agreement, including, but not limited to, the trade-in and down payment information, are true and correct and Assignor did not provide either the trade-in or the down-payment; (b) the Agreement is a valid and binding obligation arising out of a bona-fide obligation in the ordinary course of business and is fully enforceable according to its terms; (c) the collateral is as represented to the Buyer; (d) Assignor made all disclosures required by law, and in the manner required by law prior to Buyer's execution thereof; (e) Buyer is not a minor and has the capacity to contract; (f) Assignor has obtained, or caused to be obtained, a properly perfected first priority security interest (or, in Quebec, a first ranking movable hypothec) in the collateral or has delivered the title, or caused the title to be delivered, to Assignee or noted, or caused to be noted, Assignee's lien on the title to the collateral, whichever applies; (g) as of the date of the Agreement, Assignor has verified that the Buyer has obtained the insurance required by the applicable Agreement and has valid proof of such verification; (h) Assignor has a properly completed and signed credit application from the Buyer; (i) the collateral was not delivered to the Buyer until credit approval has been obtained from the Assignee and the Agreement has been properly and fully completed by Buyer and Assignor; (j) title to the collateral is vested in the Assignor, free of all liens and encumbrances, and Assignor has the right to assign said title, and any property received in trade for the collateral is free of all liens and encumbrances; (k) the collateral has been paid in full or will be paid in full with Agreement proceeds; (l) Assignor is (and at all times will be) solvent and operating in the ordinary course of business; (m) the Agreement is not subject to any defense, counterclaim or setoff (or compensation in Quebec), except to the extent enforceability may be limited by bankruptcy, receivership, insolvency or moratorium laws, or by other similar laws of general application; and (n) all Agreements (other than Assignee's forms) comply with all applicable state, provincial and federal laws.

Assignor hereby unconditionally agrees to purchase the Agreement from Assignee upon demand for the full amount then unpaid whether the Agreement shall then be, or not be, in default if Buyer or any other person makes a claim against Assignee alleging facts that could constitute a breach of any of the foregoing warranties. Assignor shall assume the defense of such claims and shall indemnify and hold Assignee harmless from all loss, cost and expense arising therefrom. In addition, the Assignment includes the provisions, as outlined in the Dealer Handbook or Retail Finance Agreement, of the box checked below by Assignor which sets forth the Assignor's obligation to Assignee.

The liability of the Assignor, shall not be affected by any extension, renewal, or other change in the time of the payment of the Agreement, nor any change in the manner, place or terms of the payment thereof, nor the releaseof, nor settlement or compromise with any party liable for the payment thereof or the release or non-perfection of any security thereunder. Assignee shall not be bound to exhaust its recourse against Buyer or any other person nor any security Assignee may at any time have, before being entitled to payment from Assignor hereunder. Assignor waives notice of the acceptance of this Assignment and notices of non-payment and non-performance of the Agreement and any other notices required by the law and waives all setoffs and counterclaims. This Assignment shall become effective upon delivery of the Agreement to Assignee or upon Assignee's payment of the purchase price therefor, whichever first occurs.

ENDORSEMENT CODES   [☒] N    [ ] R    [ ] F    [ ] O

OTHER ENDORSEMENT EXPLANATION _____

PROCEEDS [ ]   WHLS (excludes payoffs)    $ _____
DIST:   [ ]   CHK/ACH    $ _____

X _____
Seller's Representative

<u>08-02-2005</u>     METRO TRACTOR, INC.
Date          Print Name

ENDORSEMENT CODES: N - Non-Recourse; R - Repurchase; F - Full Recourse; O - Other

## RETAIL CONTRACT CHECKLIST

_____ Original **signed** customer credit application(s)
_____ If Customer providing own PDI insurance, proof of customer PDI insurance coverage
_____ Buyer(s) have **signed** and **initialed** completed contract
_____ Buyer(s) name is **exact** legal name and physical address
_____ Dealer has **checked** and **signed** applicable endorsement code in assignment section
_____ Guaranty form for corporations completed, **signed** and **included** (if applicable)
_____ Cross collateralization form completed, **signed** and **included** (if applicable)
_____ Invoice **included** for allied equipment
_____ Automatic payment plan enrollment form completed, **signed** and attached with **voided** customer check or withdrawal slip (if applicable)

## THANK YOU FOR YOUR BUSINESS

21004A Rev. 1/05 Previous editions may not be used.

EXHIBIT <u>A</u>
PAGE <u>5</u> OF <u>6</u>

7003221
8/5/2005 9:35:31 AM
OR Sec. of State

9000090707

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)                    MZF

Corporation Service Company
Suite 370
285 Liberty Street
Salem, OR 97301

085845 68250142300101
525421-26

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| ALWINE | EUGENE | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1147 SE 1ST AVE SUTIE 108 | CANBY | OR | 97013 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names    ☐ NONE

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)    ☐ NONE

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| CNH CAPITAL AMERICA LLC | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 100 BRUBAKER AVE | NEW HOLLAND | PA | 17557 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

HITACH  EX120-3 EXCAVAT          42564

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable] | | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA   0858456825014230010 1
OR-Secretary Of State

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Corporation Service Company
2711 Centerville Rd, Ste. 400
Wilmington, DE 19808

EXHIBIT  A
PAGE  6 OF 6

**CASE CREDIT**  RETAIL INSTALLMENT SALE CONTRACT AND SECURITY AGREEMENT (Fixed Rate)

Dealer No. 81201
Credit Application No. 78204-A

"Buyer(s)" Legal Name(s), Street Address, City, State, Zip Code
9-Mile Construction & Excavation, Inc.
PMB 217 , 1147 SE 1st Ave, ste c108
canby, OR 97013

☐ Individual/Sole Proprietorship
If So, State of Principal Residence: _____
☐ General Partnership
If So, State of Chief Executive Office: _____
☒ Corporation/LLC/LP
If So, State in Which Formed: OR
Organization ID No.: 1

County/Parish  Clackamas
Social Security No. _____
or Taxpayer ID No. _____

"Seller" (Dealer's Legal Name and Address)
WESTERN POWER & EQUIPMENT CORP.
1745 NE COLUMBIA BLVD.
PO BOX 11206
PORTLAND, OR 97211
Multnomah County

The undersigned Buyer (if more than one, collectively called "Buyer") hereby purchases from Seller and Seller hereby sells to Buyer the following goods (the "Equipment") at the Time Sale Price and upon the terms set forth herein:

| NEW* OR USED | "EQUIPMENT" (Make and Type) | MODEL | SERIAL NUMBER | HOURS | "CASH SALE PRICE" |
|---|---|---|---|---|---|
| N | Takeuchi Track Loader | TL130 | 21301629 | | 38,799.00 |
| | Grouser 7' Plow Blade | | | | |
| | | | | | |
| | | | | | |

The above Equipment is purchased for ☒ commercial/business use ☐ agricultural use. *New Equipment is unused equipment, a rental unit or a demonstrator for which the manufacturer will supply all or a portion of a new equipment warranty. This Equipment may have been manufactured in a year prior to the year of purchase.

TOTAL  38,799.00

| "TRADE-IN EQUIPMENT" | | | SERIAL NUMBER | HOURS | GROSS ALLOWANCE (in Dollars) | SECURED DEBT DUE (in Dollars) | NET TRADE-IN ALLOWANCE (in Dollars) |
|---|---|---|---|---|---|---|---|
| MAKE | TYPE | MODEL | | | N/A | N/A | N/A |

**NO WARRANTY.** The Equipment is sold AS IS except for any applicable manufacturer's express, written warranty. If any manufacturer's express warranty applies to the Equipment, such warranty is restricted to the manufacturer's written, warranty provided separately to Buyer. Seller and manufacturer make no other representation or warranty, express or implied, and specifically exclude the implied warranties of merchantability and fitness for particular purpose.* Neither Seller nor manufacturer will be liable for incidental or consequential damages resulting from a breach of the express warranty or any implied warranty imposed by law.*

*Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.

**PREPAYMENTS.** Buyer may make a partial prepayment of the unpaid time balance hereunder (the "Time Balance") at any time, but any partial prepayment will not change or defer Buyer's next scheduled payments. If Buyer prepays the full unpaid Time Balance on construction equipment for commercial/business use, Buyer shall pay a prepayment fee of up to $150, unless such fee is prohibited by applicable law.

**LATE CHARGES/DEFAULT RATE/RETURNED CHECKS.** Buyer shall pay a late charge on each payment more than 10 days past due at the highest amount permitted by applicable law. Buyer shall pay interest on the unpaid balance after maturity (by acceleration or otherwise) at the highest rate permitted by applicable law. If a check is returned for any reason, Seller or Assignee may charge Buyer a returned check processing fee as established by Seller or Assignee from time to time not to exceed the maximum permitted under applicable law.

**EXTENSIONS AND REFINANCING.** If Seller or Assignee extends, defers or refinances any payments due under this Agreement, Seller or Assignee may, at its option, increase the Time Price Differential Rate.

**SECURITY INTEREST AND COLLATERAL.** Buyer hereby grants to Seller a security interest in the Equipment, and in all improvements, parts and accessories belonging to the Equipment, and all substitutions, replacements, products, (such as insurance proceeds) and all accessions related to the Equipment (the Equipment and such items are collectively referred to herein as the "Collateral"), to secure payment and performance of all existing and future obligations of Buyer under this agreement (the "Agreement") or any other agreement between Buyer and Seller, between Buyer and Assignee or any affiliate of Assignee (the "Obligations"). Loss of or damage to the Equipment shall not release Buyer from any of the obligations.

Upon request, Buyer shall take any action reasonably deemed necessary by Seller to protect and enforce Seller's interest in the Collateral or rights under this Agreement. Seller is authorized to examine the Collateral wherever located at any reasonable time or times. Buyer authorizes Seller to insert in this Agreement, or amend any financing statement or title registration documentation to reflect, the serial and/or model numbers of the Equipment if unknown at the time this Agreement is executed and to correct any errors in such numbers or any other errors in the description of the Equipment.

BUYER REPRESENTS THAT THE EQUIPMENT IS NOT BEING PURCHASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.

NOTICE TO THE BUYER:

1. DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE ADDITIONAL PAGES, EVEN IF OTHERWISE ADVISED.
2. DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
3. YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.

ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS AGREEMENT ARE A PART OF THIS AGREEMENT. THE FIRST PAGE MUST BE SIGNED, AND ALL OTHER PAGES INITIALED BY THE BUYER(S).

I agree to the foregoing. I have received and examined the Equipment, which is in good operating order and condition and is as described. I acknowledge receipt of a copy of this Agreement. I agree to purchase the Equipment described above on the terms of this Agreement.

x _Eugene T Sliva_
Buyer/Buyer's Representative

11-30-2004    9-Mile Construction & Excavation, Inc.
Date        Print Name

x _____
Buyer/Buyer's Representative
Date        Print Name

x _Raf_
Seller's Representative
11-30-2004    WESTERN POWER & EQUIPMENT CORP.
Date        Print Name

21004C Rev. 05/02 Previous editions may not be used.

Page 1 of 6

EXHIBIT B
PAGE 1 OF 6

**CASE CREDIT**

Dealer No. 61201
Credit Application No. 78204-A
Buyer Name 9-Mile Construction & Excavat

## STATEMENT OF TRANSACTION

1. Cash Sale Price ................................... 1. $ 38,799.00
2. Cash Down Payment ........................ $ 6,000.00
   Net Trade-in Allowance .................... $ N/A
   Manufacturer's Rebate ..................... $ N/A
   Total Down Payment ...................... 2. $ 6,000.00
3. Unpaid Balance of Cash Sale Price (1 minus 2) 3. $ 32,799.00
4. Other Charges
   (a) Taxes (Not In Cash Price) ........... $ N/A
   (b) Official Fees ........................... $ 10.00
   (c) UCC Filing Service Fee ............... $ 12.50
   (d) Administrative Fee .................... $ 227.50
   (e) Physical Damage Insurance ......... $ N/A
   (f) Credit Life Insurance ................. $ N/A
   (g) Credit Accident & Health Insurance $ N/A
   (h) Liability Insurance .................... $ N/A
   (i) Manufacturer's Extended Warranty Plan $ N/A
   (j) Extended Service Protection Plan ... $ N/A
   (k) (Other) _____ $ N/A
   Total Other Charges ..................... 4. $ 250.00
5. Unpaid Balance (Amount Financed) (3+4) 5. $ 33,049.00
6. Time Price Differential (Finance Charge) 6. $ 9,498.89
7. Time Balance to be Paid (Total of Payments) (5+6) 7. $ 42,547.89
8. Time Sale Price (Total Sale Price) (1+4+6) 8. $ 48,547.89
9. The Unpaid Balance hereof shall bear Finance Charges computed at a per annum rate (the "Time Price Differential Rate" or "APR") equal to **10.25** % (this is a FIXED RATE contract).
10. Date APR begins accruing:

|  | 11-30-2004 |  |
|---|---|---|
| Mo. | Day | Yr |

Buyer agrees to pay to the order of Seller the Time Balance (line item 7) in accordance with the following schedule:

| NO. OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| 59 | 1 Month | $ 709.14 | 01/14/2005 |
| 1 | 1 Month | $ 708.63 | 12/14/2009 |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |

The total "Secured Debt Due" is  $ _____ N/A _____

The secured debt on the Trade-in Equipment is owed to:

Lender Name _____ Acct. No. _____

Lender Address _____ Phone No. _____

Lender City _____ State _____ Zip _____

Payoff Good Through: _____

☐ If checked, Seller represents that the above debt has been paid.
Buyer hereby conveys to Seller all right, title and interest in the Trade-in Equipment free and clear of all encumbrances except as noted above.

**GUARANTY:**
The undersigned guarantees the prompt performance of Buyer's Obligations under the Agreement, and all modifications and extensions thereof, including prompt payment of all sums when due. The undersigned shall, immediately upon demand, pay any sum due under the Agreement and all modifications and extensions thereof, without setoff. The undersigned hereby waives notice of any modifications, amendments, or extensions of the Agreement, and of Buyer's nonperformance or breach of the Agreement. The payment obligations under this Guaranty are the direct, primary, and continuing obligations of the undersigned and the undersigned's heirs, successors and assigns, and not merely a guaranty of collection. Capitalized terms used in this Guaranty have the same meaning given to them in the Agreement.

Guarantor Signature: _Eugene Alwine_        Address: _____

Print Name: EUGENE ALWINE        City, State, Zip: _____

X _____
Buyer's Initials

21004C  Rev. 05/02  Previous editions may not be used.        Page 2 of 6

EXHIBIT B
PAGE 2 OF 6

**CASE CREDIT**

Dealer No. 61201
Credit Application No. 78204-A
Buyer Name 9-Mile Construction & Excavat

## ADDITIONAL PROVISIONS

1. **Assignment.** Seller will assign this Agreement to Case Credit Corporation ("Assignee"). Buyer acknowledges that Seller has the right to assign this Agreement, that all rights and benefits but no obligations (if any) of Seller under this Agreement may be exercised by Assignee and that no obligations (if any) of Seller pass to Assignee. Upon receipt of notice from Assignee with instructions for payment, Buyer shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Buyer and Seller and their respective heirs, personal representatives, successors or assigns; provided, however, that Buyer may not assign its obligations under this Agreement to any person without Assignee's prior written consent.

2. **Notification of Change in Residence, Principal Office, or Organizational Form.** If Buyer changes (a) its state of principal residence, or (b) the state in which its chief executive office is located, or (c) the state in which its corporation, limited liability company or limited partnership is organized, or (d) its form of organization (such as from an individual to a corporation), Buyer will notify Assignee in writing promptly, but in no event more than thirty days after any such change.

3. **Waiver of Defenses Against Assignee; Indemnification.** Buyer will not assert against Assignee any claim or defense which Buyer may have against Seller or the manufacturer of the Equipment. Buyer agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee all amounts under this Agreement is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, notwithstanding any breach or alleged breach of any representation, warranty or condition with respect to the Equipment or any dispute which now or hereafter arises between Buyer and Seller or any other person. Buyer shall indemnify and hold harmless Seller, Assignee and their officers, directors, employees and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and against any and all fees, damages, injuries, claims, demands, costs and expenses (including without limitation reasonable attorneys' fees and expenses) of any kind and nature, arising out of or connected with the use, condition (including without limitation, if defects whether or not discoverable by Buyer, Seller or Assignee) or operation of the Equipment or any part thereof. Buyer shall promptly notify Assignee of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Agreement or the Equipment of which Buyer has notice.

4. **Buyer's Covenants.** Buyer shall (i) keep the Equipment in the county of Buyer's address set forth on page 1 of this Agreement and not remove the Equipment from such address, except temporarily in connection with its ordinary use, unless Assignee consents in writing; (ii) maintain the Equipment in good condition and repair and not permit its value to be impaired; (iii) keep the Collateral free of all liens, encumbrances and security interests of persons other than Assignee; (iv) defend the Collateral against all claims and legal proceedings by persons other than Assignee; (v) pay and discharge when due all taxes, fees, levies and other charges upon the Collateral; (vi) pay when due all taxes arising from the purchase of the Equipment under this Agreement, excluding any taxes based upon Seller's net income; (vii) use Equipment solely in the conduct of Buyer's business; (viii) ensure Equipment will be used solely within the intended uses of the manufacturer during the term of this Agreement; (ix) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; (x) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; and (xi) strictly follow the terms of Provision 1 of this Agreement.

   Each individual executing this Agreement represents and warrants that he or she has the requisite power and authority to enter into this Agreement and execute all related documents, to perform its obligations and consummate the transactions contemplated under this Agreement and related documents and that the execution and delivery of this Agreement and all related documents and the consummation of the transactions under this Agreement have been duly authorized by the Buyer.

5. **Insurance.** Buyer shall keep the Equipment and Seller's and its assigns interest in it insured against fire, theft, physical damage and other hazards under policies listing Assignee as loss payee or as an additional insured, with such provisions, for such amounts (but not less than the unpaid balance outstanding under this Agreement) and by such insurers as shall be satisfactory to Assignee from time and time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days written notice of cancellation, lapse or expiration to Assignee. Buyer assigns (and directs any insurer to pay) to Assignee Buyer's interest in the proceeds of all such insurance and any premium refund and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment, returning any excess to Buyer. Buyer must make all payments due under this Agreement whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Buyer or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default.

   If Buyer purchased physical damage insurance that is financed under this Agreement, Buyer hereby requests and authorizes Seller (provided Seller is properly licensed to do so) or Seller's designee; (a) to arrange physical damage insurance for the benefit of Seller and Buyer that covers physical damage to the Equipment, (b) to replace or otherwise modify such insurance as Seller deems appropriate and (c) to be Buyer's attorney-in-fact to make claim for, receive payment of and execute and endorse and negotiate all documents, checks or drafts received in payment of loss or damage under the Insurance. This Agreement includes and hereby incorporates by reference any Insurance and Extended Service Plan Addendum signed in connection with this Agreement.

   STATEMENT TO BUYER: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS AGREEMENT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. BUYER UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS AGREEMENT, PRE-PAYMENT OF BUYER'S OBLIGATIONS OR TERMINATION OF THIS AGREEMENT MAY RESULT IN LOSS OF INSURANCE COVERAGE.

   If Buyer purchased liability insurance that is financed under this Agreement, Buyer hereby requests and authorizes Seller (provided Seller is authorized to do so) or Seller's designee to arrange for the liability insurance to be issued.

6. **Modifications and Waivers.** This Agreement sets forth the entire understanding between Seller and Buyer. No modification, amendment or extension of this Agreement and no waiver of any provision of this Agreement shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Seller shall not constitute a waiver of any other prior or subsequent default, except that Buyer authorizes Seller to insert in this Agreement the serial number and/or model number of any Equipment if this information is unknown when this Agreement is executed or to correct any errors in such numbers or any other patent errors in the description of the Equipment.

7. **Authority of Assignee to Perform for Buyer.** If Buyer fails to perform any of Buyer's duties set forth in this Agreement (including, specifically but without limitation, the purchase of insurance), Assignee may, at its option, in Buyer's name or otherwise, take any such action, including, without limitation, signing Buyer's name or paying any amount so required, and all costs and expenses incurred by Seller or Assignee in connection therewith shall form part of the Obligations and shall be payable by Buyer upon demand with interest from the date of payment by Seller or Assignee at the highest rate permitted by law.

8. **Default.** Buyer shall be in default under this Agreement if any of the following occurs:

   (a)    Buyer fails to pay when due any of the Obligations, or to perform any other obligation of Buyer in this Agreement or in any renewal or refinancing of this Agreement;

   (b)    a Buyer dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to assign this Agreement or attempts to remove, sell, transfer, further encumber, part with possession of or sublet any Equipment;

   (c)    any warranty or representation made by Buyer to induce Seller or Assignee to extend credit to Buyer, under this Agreement or otherwise, is false in any material respect when made or Buyer fails to perform any covenant under this Agreement;

   (d)    Buyer fails to maintain applicable required insurance or fails to comply with the requirements of any such insurance;

   (e)    any other event occurs that causes Seller or Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk; or

   (f)    the Equipment is impounded or confiscated by any federal, state or local governmental authority.

X _____
Buyer's Initials

21004C  Rev. 05/02  Previous editions may not be used

Page 3 of 5

CASE CREDIT COPY          Original          V7.0

EXHIBIT B
PAGE 3 OF 6

011/30/04 08593548

## CASE CREDIT

Dealer No. 61201
Credit Application No. 78204-A
Buyer Name 9-Mile Construction & Excavat

9. **Expenses.** To the extent not prohibited by law, Buyer shall reimburse Seller or Assignee for any expense incurred by Seller or Assignee in protecting or enforcing their rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Collateral, and all expenses and costs incurred in collecting the Obligations, and all such expenses shall form part of the Obligations.

10. **Conflict with Law.** Any provision of this Agreement prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Agreement. The validity, construction and enforcement of this Agreement are governed by the laws of the state in which the Seller is located. All terms not otherwise defined have the meanings assigned to them by the Uniform Commercial Code.

11. **Authorization to Execute and File Financing Statements and Lien Documents.** Buyer hereby authorizes Seller or Seller's designee to execute and file financing statements, and any motor vehicle title, registration and lien notification documentation, and any amendments thereto on behalf and in the name of Buyer to evidence Seller's security interest in the Collateral.

12. **Time Price Calculations.** If this is a variable rate contract, the Prime Rate for a given calendar month shall be the rate designated as the "Prime Rate" as published in *The Wall Street Journal* on the twentieth day of the prior calendar month (or on the next day published if not published on the twentieth day). If *The Wall Street Journal* ceases publication permanently or no longer publishes a "Prime Rate", the Prime Rate shall mean the prime loan rate of any federally chartered bank selected by Assignee. The payments, including Time Price Differential (Finance Charge) indicated herein, have been calculated using the Time Price Differential Rate (APR) in effect at the commencement of this Agreement and indicated herein. The final payment shall be recalculated to reflect increases/decreases in the Prime Rate during the remaining term. The Time Price Differential Rate (APR) shall never be less than 0%.

For all contracts, the Time Price Differential Rate (APR) shall be calculated for the actual number of days elapsed, using a daily rate determined by dividing the annual rate by 365. Buyer shall make all payments in lawful money of the United States of America.

13. **Remedies upon Default.** Upon the occurrence of any event of default, Seller shall have all rights and remedies provided by the Uniform Commercial Code or any other applicable law and Seller may, at its option: (i) declare all Obligations immediately due and payable (excluding the unearned Time Price Differential) without notice or demand, nor any waiver of intent to accelerate or notice of acceleration; (ii) take possession of the Collateral, without notice or hearing, and, where permitted by law, Buyer expressly waives any right to notice or a prior hearing; (iii) require Buyer to assemble the Collateral and make it available to Seller at any convenient place designated by Seller; or (v) sell (including at wholesale) or otherwise dispose of the Collateral at public or private sale for cash or on credit terms, without notice unless required by law. If notice is required by law, ten (10) days' notice to Buyer shall be deemed reasonable notice. All rights and remedies may be exercised by Seller either separately or in combination and any action taken by Seller to recover payment from Buyer of the Obligations shall not limit Seller's rights with respect to the Collateral. Seller may apply all proceeds of realization of the Collateral to such part or parts of the Obligations as Seller may decide. If there is a deficiency, Buyer will pay the amount of the deficiency upon demand. To the extent permitted by law Buyer waives notice of dishonor, presentment and demand as to this Agreement.

---

**Automatic Payment Plan Enrollment Form**

The undersigned authorizes Case Credit Corporation or any assignee ("Case Credit") to initiate withdrawals from the account designated below and maintained with the bank identified below by any means agreed upon by Case Credit and the bank, or to withdraw by electronic fund transfer from said account, sums due Case Credit pursuant to retail contracts or leases. The undersigned further authorizes the bank to take all actions necessary to effect such withdrawals and transfers. The undersigned may cancel these authorizations by providing Case Credit written notice, but any such cancellation will become effective five days after Case Credit receives the notice. Case Credit may cancel this authorization at any time by written notice.

Customer Name (as it appears on the payment notices) 9-Mile Construction & Excavation, Inc.

Address PMB 217 _____ City canby _____ State OR _____ Zip 97013

Customer's Bank Name _____

Bank Address _____ City _____ State _____ Zip _____

Customer Account Number _____

☐ I prefer to use my checking account. I have enclosed a voided check.

Routing # _____ Account # _____

☐ I prefer to use my savings account. I have confirmed with my bank the routing number and my withdrawal slip is enclosed.

Routing # _____ Account # _____

☐ Be sure to date and sign this form.

Date 11-30-2004 _____ Signature 9-Mile Construction & Excavation, Inc.

Date _____ Signature _____

X _____
Buyer's Initials

21004C Rev. 05/02 Previous editions may not be used.

Page 4 of 5

CASE CREDIT COPY    Original    V7.0


EXHIBIT B
PAGE 4 OF 6

**CASE CREDIT**

Dealer No. 61201
Credit Application No. 78204-A
Buyer Name 9-Mile Construction & Excavat

## ASSIGNMENT

Dealer (hereinafter "Assignor") hereby assigns all its rights, title and interest in and to the Agreement and the Equipment to Case Credit Corporation (hereinafter "Assignee"), under terms also described in the Retail Finance Agreement or other documents (collectively hereinafter "Agreement") executed by the Assignor and Assignee.

Assignor warrants and represents as follows: (a) all statements contained in the Agreement, including, but not limited to, the trade-in and down payment information, are true and correct and Assignor did not provide either the trade-in or the down-payment; (b) the Agreement is a valid and binding obligation arising out of a bona-fide obligation in the ordinary course of business and is fully enforceable according to its terms; (c) the collateral is as represented to the Buyer; (d) Assignor made all disclosures required by law, and in the manner required by law prior to Buyer's execution thereof; (e) Buyer is not a minor and has the capacity to contract; (f) Assignor has obtained, or caused to be obtained, a properly perfected first priority security interest (or, in Quebec, a first ranking movable hypothec) in the collateral or has delivered the title, or caused the title to be delivered, to Assignee or noted, or caused to be noted, Assignee's lien on the title to the collateral, whichever applies; (g) as of the date of the Agreement, Assignor has verified that the Buyer has obtained the insurance required by the applicable Agreement and has valid proof of such verification; (h) Assignor has a properly completed and signed credit application from the Buyer; (i) the collateral was not delivered to the Buyer until credit approval has been obtained from the Assignee and the Agreement has been properly and fully completed by Buyer and Assignor; (j) title to the collateral is vested in the Assignor, free of all liens and encumbrances, and Assignor has the right to assign said title, and any property received in trade for the collateral is free of all liens and encumbrances; (k) the collateral has been paid in full or will be paid in full with Agreement proceeds; (l) Assignor is (and at all times will be) solvent and operating in the ordinary course of business; (m) the Agreement is not subject to any defense, counterclaim or setoff (or compensation in Quebec), except to the extent enforceability may be limited by bankruptcy, receivership, insolvency or moratorium laws, or by other similar laws of general application; and (n) all Agreements (other than Assignee's forms) comply with all applicable state, provincial and federal laws.

Assignor hereby unconditionally agrees to purchase the Agreement from Assignee upon demand for the full amount then unpaid whether the Agreement shall then be, or not be, in default if Buyer or any other person makes a claim against Assignee alleging facts that could constitute a breach of any of the foregoing warranties. Assignor shall assume the defense of such claims and shall indemnify and hold Assignee harmless from all loss, cost and expense arising therefrom. In addition, the Assignment includes the provisions, as outlined in the Dealer Handbook or Retail Finance Agreement, of the box checked below by Assignor which sets forth the Assignors obligation to Assignee.

The liability of the Assignor, shall not be affected by any extension, renewal, or other change in the time of the payment of the Agreement, nor any change in the manner, place or terms of the payment thereof, nor the released, nor settlement or compromise with any party liable for the payment thereof or the release or non-perfection of any security thereunder. Assignee shall not be bound to exhaust its recourse against Buyer or any other person nor any security Assignee may at any time have, before being entitled to payment from Assignor hereunder. Assignor waives notice of the acceptance of this Assignment and notices of non-payment and non-performance of the Agreement and any other notices required by the law and waives all setoffs and counterclaims. This Assignment shall become effective upon delivery of the Agreement to Assignee or upon Assignee's payment of the purchase price therefor, whichever first occurs.

ENDORSEMENT CODES  [X] N   [ ] R   [ ] F   [ ] O
OTHER ENDORSEMENT EXPLANATION _____

PROCEEDS [ ] WHLS (excludes payoffs)   $ _____
DIST.    [ ] CHK/ACH                    $ _____

X _PnP_
Seller's Representative

11-30-2004    WESTERN POWER & EQUIPMENT CORP.
Date          Print Name

ENDORSEMENT CODES: N - Non-Recourse; R - Repurchase; F - Full Recourse; O - Other

## RETAIL CONTRACT CHECKLIST

_____ Original signed customer credit application(s)
_____ If Customer providing own PDI insurance, proof of customer PDI insurance coverage
_____ Buyer(s) have signed and initialed completed contract
_____ Buyer(s) name is exact legal name and physical address
_____ Photocopy of buyer(s) valid drivers license or passport or completed, signed applicant name and address verification form attached
_____ Dealer has checked and signed applicable endorsement code in assignment section
_____ Guaranty form for corporations completed, signed and included (if applicable)
_____ Cross collateralization form completed, signed and included (if applicable)
_____ Invoice included for allied equipment
_____ Automatic payment plan enrollment form completed, signed and attached with voided customer check or withdrawal slip (if applicable)

## THANK YOU FOR YOUR BUSINESS

21004C Rev. 05/02 Previous editions may not be used.                    Page 5 of 5

CASE CREDIT COPY         Original              V7.0

EXHIBIT B
PAGE 5 OF 6

**6768000**
**12/9/2004 3:09:16 PM**
**OR Sec. of State**

9004522105

## UCC FINANCING STATEMENT
**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)    TLW

```
Corporation Service Company
Suite 370
285 Liberty Street
Salem OR
```

56250-478

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 9-MILE CONSTRUCTION & EXCAVATION INC | | | | | |

OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| SE 1ST AVE STE 108 PO BOX PMB2 | CANBY | OR | 97013 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION CORP | 1f. JURISDICTION OF ORGANIZATION OR | 1g. ORGANIZATIONAL ID #, if any 159933-97 | NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

(blank)

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| CASE CREDIT CORPORATION ID#76-0394710 | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. BOX 292 | RACINE | WI | 53401 | USA |

4. This FINANCING STATEMENT covers the following collateral:

TAKEUC  TL130  LOADER        21301629

5. ALTERNATIVE DESIGNATION [if applicable]: LESSEE/LESSOR  CONSIGNEE/CONSIGNOR  BAILEE/BAILOR  SELLER/BUYER  AG. LIEN  NON-UCC FILING

8. OPTIONAL FILER REFERENCE DATA 06814309226120100201

OR-Secretary Of State

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Corporation Service Company
2711 Centerville Rd, Ste. 400
Wilmington, DE 19808

EXHIBIT B
PAGE 6 OF 6

# CNH Capital

### RETAIL INSTALLMENT SALE CONTRACT AND SECURITY AGREEMENT
### ( Fixed Rate )

Dealer No. 61201

Credit Application No. 79153-A

| "Buyer(s)" Legal Name(s), Street Address, City, State, Zip Code | | "Seller": (Dealer's Legal Name and Address) |
|---|---|---|
| 9-Mile Construction & Excavation, Inc.<br>1147 SE 1st, Ste 108<br>Canby, OR 97013 | ☐ Individual/Sole Proprietorship<br>If So, State of Principal<br>Residence:<br><br>☐ General Partnership<br>If So, State of Chief<br>Executive Office:<br><br>☒ Corporation/LLC/LP | Western Power & Equipment Corp<br>1745 NE Columbia Blvd.<br>PO Box 11206<br>Portland, OR 97211<br>Multnomah County |
| County/Parish  Clackamas<br><br>Social Security No.<br>or Taxpayer ID No. | If So, State in Which Formed: OR<br>Organization ID No.: 1 | |

The undersigned Buyer (if more than one, collectively called "Buyer") hereby purchases from Seller and Seller hereby sells to Buyer the following goods (the "Equipment") at the Time Sale Price and upon the terms set forth herein:

| NEW*<br>OR USED | "EQUIPMENT"<br>(Make and Type) | MODEL | SERIAL NUMBER | HOURS | "CASH SALE PRICE" |
|---|---|---|---|---|---|
| N | Takeuchi Excavator | TB145 | 14514744 | | 55,200.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

The above Equipment is purchased for ☒ commercial/business use ☐ agricultural use. *New Equipment is unused equipment, a rental unit or a demonstrator for which the manufacturer will supply all or a portion of a new equipment warranty, this Equipment may have been manufactured in a year prior to the year of purchase

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | TOTAL | 55,200.00 |

| "TRADE-IN EQUIPMENT" | | | SERIAL NUMBER | HOURS | GROSS<br>ALLOWANCE<br>(In Dollars) | SECURED<br>DEBT DUE<br>(In Dollars) | NET TRADE-IN<br>ALLOWANCE<br>(In Dollars) |
|---|---|---|---|---|---|---|---|
| MAKE | TYPE | MODEL | | | | | |
| | | | | | N/A | N/A | N/A |

**NO WARRANTY.** The Equipment is sold AS IS except for any applicable manufacturer's express, written warranty. If any manufacturer's express warranty applies to the Equipment, such warranty is restricted to the manufacturer's written, limited warranty provided separately to Buyer. Seller and manufacturer make no other representation or warranty, express or implied, and specifically exclude the implied warranties of merchantability and fitness for particular purpose.* Neither Seller nor manufacturer will be liable for incidental or consequential damages resulting from a breach of the express warranty or any implied warranty imposed by law.*

*Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.

**PREPAYMENTS.** Buyer may make a partial prepayment of the unpaid time balance hereunder (the "Time Balance") at any time, but any partial prepayment will not change or defer Buyer's next scheduled payments. If Buyer prepays the full unpaid Time Balance on construction equipment for commercial/business use, Buyer shall pay a prepayment fee of up to $150, unless such fee is prohibited by applicable law.

**LATE CHARGES/DEFAULT RATE/RETURNED CHECKS.** Buyer shall pay a late charge on each payment more than 10 days past due at the highest amount permitted by applicable law. Buyer shall pay interest on the unpaid balance after maturity (by acceleration or otherwise) at the highest rate permitted by applicable law. If a check is returned for any reason, Seller or Assignee may charge Buyer a returned check processing fee as established by Seller or Assignee from time to time not to exceed the maximum permitted under applicable law.

**EXTENSIONS AND REFINANCING.** If Seller or Assignee extends, defers or refinances any payments due under this Agreement, Seller or Assignee may, at its option, increase the Time Price Differential Rate.

**SECURITY INTEREST AND COLLATERAL.** Buyer hereby grants to Seller a security interest in the Equipment, and in all improvements, parts and accessories belonging to the Equipment, and all substitutions, replacements, products, proceeds (such as insurance proceeds) and all accessions related to the Equipment (the Equipment and such items are collectively referred to herein as the "Collateral"), to secure payment and performance of all existing and future obligations of Buyer under this agreement (the "Agreement") or any other agreement between Seller and Buyer, between Buyer and Assignee or any affiliate of Assignee (the "Obligations"). Loss of or damage to the Equipment shall not release Buyer from any of the obligations.

Upon request, Buyer shall take any action reasonably deemed necessary by Seller to protect and enforce Seller's interest in the Collateral or rights under this Agreement. Seller is authorized to examine the Collateral wherever located at any reasonable time or times. Buyer authorizes Seller to insert in this Agreement, or amend any financing statement or title registration documentation to reflect, the serial and/or model numbers of the Equipment if unknown at the time this Agreement is executed and to correct any errors in such numbers or any other errors in the description of the Equipment.

**BUYER REPRESENTS THAT THE EQUIPMENT IS NOT BEING PURCHASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.**

**NOTICE TO THE BUYER:**

1. DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE ADDITIONAL PAGES, EVEN IF OTHERWISE ADVISED.

2. DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.

3. YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.

ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES ARE A PART OF THIS AGREEMENT. THE FIRST PAGE MUST BE SIGNED, AND ALL OTHER PAGES INITIALED BY THE BUYER(S).

I agree to the foregoing. I have received and examined the Equipment, which is in good operating order and condition and is as described. I acknowledge receipt of a copy of this Agreement. I agree to purchase the Equipment described above on the terms of this Agreement.

X _Eugene D. Blum_
Buyer/Buyer's Representative                         Title (if applicable)

03-07-2006   9-Mile Construction & Excavation, Inc.
Date        Print Name

X
Buyer/Buyer's Representative                         Title (if applicable)

Date        Print Name

X _PMP_
Seller's Representative

03-07-2006   Western Power & Equipment Corp
Date        Print Name

21004A  Rev. 1/05  Previous editions may not be used.

CNH CAPITAL COPY

Page 1 of 5

V7.1

EXHIBIT C

PAGE 1 OF 6

# CNH Capital

Dealer No. 91201
Credit Application No. 79153-A
Buyer Name 9-Mile Construction & Excavation, Inc.

**STATEMENT OF TRANSACTION**

1  Cash Sale Price                                    1. $        55,200.00
2  Cash Down Payment               $    8,400.00
    Net Trade-in Allowance            $         N/A
    Manufacturer's Rebate             $         N/A
    Total Down Payment                                2. $         8,400.00
3.  Unpaid Balance of Cash Sale Price (1 minus 2)    3 $      46,800.00
4.  Other Charges
    (a) Taxes (Not in Cash Price)     $         N/A
    (b) Official Fees                      $       10.00
    (c) UCC Filing Service Fee        $       12.50
    (d) Administrative Fee              $      227.50
    (e) Physical Damage Insurance   $         N/A
    (f) Credit Life Insurance            $         N/A
    (g) Credit Accident & Health Insurance  $     N/A
    (h) Liability Insurance              $         N/A
    (i) Manufacturer's Extended Warranty Plan  $   N/A
    (j) Extended Service Protection Plan  $      N/A
    (k) (Other) _____          $         N/A
    Total Other Charges                               4 $         250.00
5  Unpaid Balance (Amount Financed) (3+4)           5. $       47,050.00
6  Time Price Differential (Finance Charge)          6. $       10,221.95
7.  Time Balance to be Paid (Total of Payments) (5+6)  7. $     57,271.95
8  Time Sale Price (Total Sale Price) (1+4+6)        8. $       65,871.95
9.  The Unpaid Balance hereof shall bear Finance Charges computed at a per annum
     rate (the "Time Price Differential Rate" or "APR") equal to __7.90__ % (this is a
     FIXED RATE contract).
10.  Date APR begins accruing:                    ___03-07-2006___
                                                          Mo      Day      Yr

Buyer agrees to pay to the order of Seller the Time Balance (line item 7) in accordance with the following schedule:

| NO. OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| 59 | 1 Month | $ 954.54 | 04/20/2006 |
| 1 | 1 Month | $ 954.09 | 03/20/2011 |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |

The total "Secured Debt Due" Is  $ _____  N/A

The secured debt on the Trade-in Equipment is owed to:

Lender Name _____  Acct. No. _____

Lender Address _____  Phone No _____

Lender City _____  State _____  Zip _____

Payoff Good Through: _____

☐  if checked, Seller represents that the above debt has been paid.
Buyer hereby conveys to Seller all right, title and interest in the Trade-in Equipment free and clear of all encumbrances except as noted above.

**GUARANTY:**

The undersigned guarantees the prompt performance of Buyer's Obligations under the Agreement, and all modifications and extensions thereof, including prompt payment of all sums when due. The undersigned shall, immediately upon demand, pay any sum due under the Agreement and all modifications and extensions thereof, without setoff. The undersigned hereby waives notice of any modifications, amendments, or extensions of the Agreement, and of Buyer's nonperformance or breach of the Agreement  The payment obligations under this Guaranty are the direct, primary, and continuing obligations of the undersigned and the undersigned's heirs, successors and assigns, and not merely a guaranty of collection. Capitalized terms used in this Guaranty have the same meaning given to them in the Agreement.

Guarantor Signature: _Eugene T Alwine_          Address: _____

Print Name: Eugene T Alwine                             City, State, Zip: _____

X _____
Buyer's Initials

21004A  Rev. 1/05  Previous editions may not be used.

CNH CAPITAL COPY

Page 2 of 5
V7.1

EXHIBIT    C
PAGE  2 OF 6

# CNH Capital

Dealer No. 61201
Credit Application No. 79153-A
Buyer Name 9-Mile Construction & Excavation, Inc.

## ADDITIONAL PROVISIONS

1. **Assignment.** Seller will assign this Agreement to CNH Capital America LLC (hereinafter "Assignee"). Buyer acknowledges that Seller has the right to assign this Agreement, that all rights and benefits but no obligations (if any) of Seller under this Agreement may be exercised by Assignee and that no obligations (if any) of Seller pass to Assignee. Upon receipt of notice from Assignee with instructions for payment, Buyer shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Buyer and Seller and their respective heirs, personal representatives, successors or assigns; provided, however, that Buyer may not assign its obligations under this Agreement to any person without Assignee's prior written consent.

2. **Notification of Change in Residence, Principal Office, or Organizational Form.** If Buyer changes (a) its state of principal residence, or (b) the state in which its chief executive office is located, or (c) the state in which its corporation, limited liability company or limited partnership is organized, or (d) its form of organization (such as from an individual to a corporation), Buyer will notify Assignee in writing promptly, but in no event more than thirty days after any such change.

3. **Waiver of Defenses Against Assignee; Indemnification.** Buyer will not assert against Assignee any claim or defense which Buyer may have against Seller or the manufacturer of the Equipment. Buyer agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee all amounts under this Agreement is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, notwithstanding any breach or alleged breach of any representation, warranty or condition with respect to the Equipment or any dispute which now or hereafter arises between Buyer and Seller or any other person. Buyer shall indemnify and hold harmless Seller, Assignee and their officers, directors, employees and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and against any and all loss, damages, injuries, claims, demands, costs and expenses (including without limitation reasonable attorneys' fees and expenses) of any kind and nature, arising out of or connected with the use, condition (including without limitation, all defects whether or not discoverable by Buyer, Seller or Assignee) or operation of the Equipment or any part thereof. Buyer shall promptly notify Assignee of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Agreement or the Equipment of which Buyer has notice.

4. **Buyer's Covenants.** Buyer shall (i) keep the Equipment in the county of Buyer's address set forth on page 1 of this Agreement and not remove the Equipment from such address, except temporarily in connection with its ordinary use, unless Assignee consents in writing; (ii) maintain the Equipment in good condition and repair and not permit its value to be impaired; (iii) keep the Collateral free of all liens, encumbrances and security interests of persons other than Assignee; (iv) defend the Collateral against all claims and legal proceedings by persons other than Assignee; (v) pay and discharge when due all taxes, fees, levies and other charges upon the Collateral; (vi) pay when due all taxes arising from the purchase of the Equipment under this Agreement, excluding any taxes based upon Seller's net income, (vi) use Equipment solely in the conduct of Buyer's business; (viii) ensure Equipment will be used solely within the intended uses of the manufacturer during the term of this Agreement; (ix) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; (x) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; and (xi) strictly follow the terms of Provision 1 of this Agreement.

   Each individual executing this Agreement represents and warrants that he or she has the requisite power and authority to enter into this Agreement and execute all related documents, to perform its obligations and consummate the transactions contemplated under this Agreement and related documents and that the execution and delivery of this Agreement and all related documents and the consummation of the transactions under this Agreement have been duly authorized by the Buyer.

5. **Insurance.** Buyer shall keep the Equipment and Seller's and Assignee's interests in it insured against fire, theft, physical damage and other hazards under policies listing Assignee as loss payee or as an additional insured, with such provisions, for such amounts (but not less than the unpaid balance outstanding under this Agreement) and by such insurers as shall be satisfactory to Assignee from time and time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days written notice of cancellation, lapse or expiration to Assignee. Buyer assigns (and directs any insurer to pay) to Assignee Buyer's interest in the proceeds of all such insurance and any premium refund and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment, returning any excess to Buyer. Buyer must make all payments due under this Agreement whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Buyer or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default.

   If Buyer purchased physical damage insurance that is financed under this Agreement, Buyer hereby requests and authorizes Seller (provided Seller is properly licensed to do so) or Seller's designee; (a) to arrange physical damage insurance for the benefit of Seller and Buyer that covers physical damage to the Equipment, (b) to replace or otherwise modify such insurance as Seller deems appropriate and (c) to be Buyer's attorney-in-fact to make claim for, receive payment of and execute and endorse and negotiate all documents, checks or drafts received in payment of loss or damage under the insurance. This Agreement includes and hereby incorporates by reference any Insurance and Extended Service Plan Addendum signed in connection with this Agreement.

   STATEMENT TO BUYER: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS AGREEMENT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. BUYER UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS AGREEMENT, PRE-PAYMENT OF BUYER'S OBLIGATIONS OR TERMINATION OF THIS AGREEMENT MAY RESULT IN LOSS OF INSURANCE COVERAGE.

   If Buyer purchased liability insurance that is financed under this Agreement, Buyer hereby requests and authorizes Seller (provided Seller is authorized to do so) or Seller's designee to arrange for the liability insurance to be issued.

6. **Modifications and Waivers.** This Agreement sets forth the entire understanding between Seller and Buyer. No modification, amendment or extension of this Agreement and no waiver of any provision of this Agreement shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Seller shall not constitute a waiver of any other prior or subsequent default, except that Buyer authorizes Seller to insert in this Agreement the serial number and/or model number of any Equipment if this information is unknown when this Agreement is executed or to correct any errors in such numbers or any other patent errors in the description of the Equipment.

7. **Authority of Assignee to Perform for Buyer.** If Buyer fails to perform any of Buyer's duties set forth in this Agreement (including, specifically but without limitation, the purchase of insurance), Assignee may, at its option, in Buyer's name or otherwise, take any such action, including, without limitation, signing Buyer's name or paying any amount so required, and all costs and expenses incurred by Seller or Assignee in connection therewith shall form part of the Obligations and shall be payable by Buyer upon demand with interest from the date of payment by Seller or Assignee at the highest rate permitted by law.

8. **Default.** Buyer shall be in default under this Agreement if any of the following occurs:
   (a) Buyer fails to pay when due any of the Obligations, or to perform any other obligation of Buyer in this Agreement or in any renewal or refinancing of this Agreement;
   (b) a Buyer dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to assign this Agreement or attempts to remove, sell, transfer, further encumber, part with possession of or sublet any Equipment;
   (c) any warranty or representation made by Buyer to induce Seller or Assignee to extend credit to Buyer, under this Agreement or otherwise, is false in any material respect when made or Buyer fails to perform any covenant under this Agreement;
   (d) Buyer fails to maintain applicable required insurance or fails to comply with the requirements of any such insurance;
   (e) any other event occurs that causes Seller or Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk; or
   (f) the Equipment is impounded or confiscated by any federal, state or local governmental authority.


X
Buyer's Initials

21004A Rev. 1/05 Previous editions may not be used.

EXHIBIT C
PAGE 3 OF 6

# CNH Capital

Dealer No. 61201
Credit Application No. 79153-A
Buyer Name 9-Mile Construction & Excavation, Inc.

9. **Expenses.** To the extent not prohibited by law, Buyer shall reimburse Seller or Assignee for any expense incurred by Seller or Assignee in protecting or enforcing their rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Collateral, and all expenses and costs incurred in collecting the Obligations, and all such expenses shall form part of the Obligations.

10. **Conflict with Law.** Any provision of this Agreement prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Agreement. The validity, construction and enforcement of this Agreement are governed by the laws of the state in which the Seller is located. All terms not otherwise defined have the meanings assigned to them by the Uniform Commercial Code.

11. **Authorization to Execute and File Financing Statements and Lien Documents.** Buyer hereby authorizes Seller or Seller's designee to execute and file financing statements, and any motor vehicle title, registration and lien notification documentation, and any amendments thereto on behalf and in the name of Buyer to evidence Seller's security interest in the Collateral.

12. **Time Price Calculations.** If this is a variable rate contract, the Prime Rate for a given calendar month shall be the rate designated as the "Prime Rate" as published in *The Wall Street Journal* on the twentieth day of the prior calendar month (or on the next day published if not published on the twentieth day). If *The Wall Street Journal* ceases publication permanently or no longer publishes a "Prime Rate", the Prime Rate shall mean the prime loan rate of any federally chartered bank selected by Assignee. The payments, including Time Price Differential (Finance Charge) indicated herein, have been calculated using the Time Price Differential Rate (APR) in effect at the commencement of this Agreement and indicated herein. The final payment shall be recalculated to reflect increases/decreases in the Prime Rate during the remaining term. The Time Price Differential Rate (APR) shall never be less than 0%.

   For all contracts, the Time Price Differential Rate (APR) shall be calculated for the actual number of days elapsed, using a daily rate determined by dividing the annual rate by 365. Buyer shall make all payments in lawful money of the United States of America.

13. **Remedies upon Default.** Upon the occurrence of any event of default, Seller shall have all rights and remedies provided by the Uniform Commercial Code or any other applicable law and Seller may, at its option: (i) declare all Obligations immediately due and payable (excluding the unearned Time Price Differential) without notice or demand, nor any waiver of intent to accelerate or notice of acceleration; (ii) take possession of the Collateral, without notice or hearing, and, where permitted by law, Buyer expressly waives any right to notice or a prior hearing; (iii) render the Equipment unusable; (iv) require Buyer to assemble the Collateral and make it available to Seller at any convenient place designated by Seller; or (v) sell (including at wholesale) or otherwise dispose of the Collateral at public or private sale for cash or on credit terms, without notice unless required by law. If notice is required by law, ten (10) days' notice to Buyer shall be deemed reasonable notice. All rights and remedies may be exercised by Seller either separately or in combination and any action taken by Seller to recover payment from Buyer of the Obligations shall not limit Seller's rights with respect to the Collateral. Seller may apply all proceeds of realization of the Collateral to such part or parts of the Obligations as Seller may decide. If there is a deficiency, Buyer will pay the amount of the deficiency upon demand. To the extent permitted by law Buyer waives notice of dishonor, presentment and demand as to this Agreement.

---

**Automatic Payment Plan Enrollment Form**

*The undersigned authorizes CNH Capital America LLC or any assignee ("CNH Capital") to initiate withdrawals from the account designated below and maintained with the bank identified below by any means agreed upon by CNH Capital and the bank, or to withdraw by electronic fund transfer from said account, sums due CNH Capital pursuant to retail contracts or leases. The undersigned further authorizes the bank to take all actions necessary to effect such withdrawals and transfers. The undersigned may cancel these authorizations by providing CNH Capital written notice, but any such cancellation will become effective five days after CNH Capital receives the notice. CNH Capital may cancel this authorization at any time by written notice.*

Customer Name (as it appears on the payment notices) _____

Address _____ City _____ State _____ Zip _____

Customer's Bank Name _____

Bank Address _____ City _____ State _____ Zip _____

Customer Account Number _____

☐ I prefer to use my checking account. I have enclosed a voided check.

Routing # _____ Account # _____

☐ I prefer to use my savings account. I have confirmed with my bank the routing number and my withdrawal slip is enclosed.

Routing # _____ Account # _____

☐ Be sure to date and sign this form

Date _____ Signature _____

Date _____ Signature _____

x _____
Buyer's Initials

21004A  Rev. 1/05  Previous editions may not be used.

CNH CAPITAL COPY

Page 4 of 5
V7.1

EXHIBIT C
PAGE 4 OF 6

# CNH Capital

403/14/06 779032

Dealer No. <u>61201</u>
Credit Application No. <u>79153-A</u>
Buyer Name <u>9-Mile Construction & Excavation, Inc.</u>

## ASSIGNMENT

Dealer (hereinafter "Assignor") hereby assigns all its rights, title and interest in and to the Agreement and the Equipment to CNH Capital America LLC (hereinafter "Assignee"), under terms also described in the Retail Finance Agreement or other documents (collectively hereinafter "Agreement") executed by the Assignor and Assignee

Assignor warrants and represents as follows: (a) all statements contained in the Agreement, including, but not limited to, the trade-in and down payment information, are true and correct and Assignor did not provide either the trade-in or the down-payment; (b) the Agreement is a valid and binding obligation arising out of a bona-fide obligation in the ordinary course of business and is fully enforceable according to its terms; (c) the collateral is as represented to the Assignor; (d) Assignor made all disclosures required by law, and in the manner required by law prior to Buyer's execution thereof; (e) Buyer is not a minor and has the capacity to contract; (f) Assignor has obtained, or caused to be obtained, a properly perfected first priority security interest (or, in Quebec, a first ranking movable hypothec) in the collateral or has delivered the title, or caused the title to be delivered, to Assignee or noted, or caused to be noted, Assignee's lien on the title to the collateral, whichever applies; (g) as of the date of the Agreement, Assignor has verified that the Buyer has obtained the insurance required by the applicable Agreement and has valid proof of such verification; (h) Assignor has a properly completed and signed credit application from the Buyer; (i) the collateral was not delivered to the Buyer until credit approval has been obtained from the Assignee and the Agreement has been properly and fully completed by Buyer and Assignor; (j) title to the collateral is vested in the Assignor, free of all liens and encumbrances, and Assignor has the right to assign said title, and any property received in trade for the collateral is free of all liens and encumbrances; (k) the collateral has been paid in full or will be paid in full with Agreement proceeds; (l) Assignor is (and at all times will be) solvent and operating in the ordinary course of business; (m) the Agreement is not subject to any defense, counterclaim or setoff (or compensation in Quebec), except to the extent enforceability may be limited by bankruptcy, receivership, insolvency or moratorium laws, or by other similar laws of general application; and (n) all Agreements (other than Assignee's forms) comply with all applicable state, provincial and federal laws.

Assignor hereby unconditionally agrees to purchase the Agreement from Assignee upon demand for the full amount then unpaid whether the Agreement shall then be, or not be, in default if Buyer or any other person makes a claim against Assignee alleging facts that could constitute a breach of any of the foregoing warranties. Assignor shall assume the defense of such claims and shall indemnify and hold Assignee harmless from all loss, cost and expense arising therefrom. In addition, the Assignment includes the provisions, as outlined in the Dealer Handbook or Retail Finance Agreement, of the box checked below by Assignor which sets forth the Assignor's obligation to Assignee.

The liability of the Assignor, shall not be affected by any extension, renewal, or other change in the time of the payment of the Agreement, nor any change in the manner, place or terms of the payment thereof, nor the releaseof, nor settlement or compromise with any party liable for the payment thereof or the release or non-perfection of any security thereunder  Assignee shall not be bound to exhaust its recourse against Buyer or any other person nor any security Assignee may at any time have, before being entitled to payment from Assignor hereunder. Assignor waives notice of the acceptance of this Assignment and notices of non-payment and non-performance of the Agreement and any other notices required by the law and waives all setoffs and counterclaims. This Assignment shall become effective upon delivery of the Agreement to Assignee or upon Assignee's payment of the purchase price therefor, whichever first occurs.

ENDORSEMENT CODES  ☒ N   ☐ R   ☐ F   ☐ O
OTHER ENDORSEMENT EXPLANATION _____

| PROCEEDS | ☐ | WHLS (excludes payoffs) | $ |
| DIST. | ☐ | CHK/ACH | $ |

X _(signature)_
Seller's Representative

| 03-07-2006 | Western Power & Equipment Corp |
| Date | Print Name |

ENDORSEMENT CODES:  N - Non-Recourse; R - Repurchase; F - Full Recourse; O - Other

## RETAIL CONTRACT CHECKLIST

_____ Original **signed** customer credit application(s)
_____ If Customer providing own PDI insurance, proof of customer PDI insurance coverage
_____ Buyer(s) have **signed** and **initialed** completed contract
_____ Buyer(s) name is **exact** legal name and physical address
_____ Dealer has **checked** and **signed** applicable endorsement code in assignment section
_____ Guaranty form for corporations completed, **signed** and **included** (if applicable)
_____ Cross collateralization form completed, **signed** and **included** (if applicable)
_____ Invoice **included** for allied equipment
_____ Automatic payment plan enrollment form completed, **signed** and attached with **voided** customer check or withdrawal slip (if applicable)

## THANK YOU FOR YOUR BUSINESS

21004A  Rev. 1/05  Previous editions may not be used

CNH CAPITAL COPY

EXHIBIT ___C___
PAGE __5__ OF __6__

7204213
3/16/2006 2:37:01 PM
OR Sec. of State

9000573407

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)    TLW

```
Corporation Service Company
Suite 370
 285 Liberty Street
Salem, OR 97301
```

923409-1

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 9-MILE CONSTRUCTION & EXCAVATION | | | | |
| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1147 SE 1ST, STE 108 | CANBY | OR | 97013 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | CORP | OR | 159933-97 ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| CNH CAPITAL AMERICA LLC | | | | |
| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 100 BRUBAKER AVE | NEW HOLLAND | PA | 17557 | USA |

4. This FINANCING STATEMENT covers the following collateral:

TAKEUC  TB145   EXCAVAT.          14514744

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA  06814309226120100401

OR-Secretary Of State

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Corporation Service Company
2711 Centerville Rd, Ste. 400
Wilmington, DE 19808

EXHIBIT  C
P.   6 OF 6

1                          **CERTIFICATE OF SERVICE**

2          I hereby certify that on the 26th day of January, 2010, I served the foregoing AMENDED

3   OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN:

4          by delivering a true and correct copy thereof via ECF to:

5   • PATTI H BASS      ecf@bass-associates.com

6   • Brian D. Lynch      c0urtmai1@portland13.com, c0urtmai1@portland13ct.com

7   • ANDREW R NAYLOR      anaylor@sglaw.com, epaetsch@sglaw.com

8   • ALEX I POUST      apoust@schwabe.com, dsalt@schwabe.com;docket@schwabe.com

9   • TODD TRIERWEILER      orecf@bankruptcylawctr.com, orecf@whiz.to

10  • US Trustee, Portland      USTPRegion18.PL.ECF@usdoj.gov

11  • JAMES MIERSMA      ecfor@rcflegal.com

12         DATED this 26th day of January, 2010.

13
                                        /s/ Alex I. Poust
14                                      Alex I. Poust, OSB #925155

15

16

17

18

19

20

21

22

23

24

25

26

Page 1 -    CERTIFICATE OF SERVICE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
503.222.9981

Case 10-31675-rld13      Doc 23      Filed 01/26/10